Christopher K. Larus (#0226828)
Kristine A. Tietz (#0393477)
Robins, Kaplan, Miller & Ciresi, L.L.P
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: 612-349-8500
Facsimile: 612-339-4181

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **PARADISE MEDIA VENTURES, LLC d/b/a Interactive Media Ventures a/k/a Social Media Marketing University,** | ) ) ) ) ) ) | **CIVIL ACTION NO.** _____ |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **JURY TRIAL DEMANDED** |
| **NATIONAL INSTITUTE FOR SOCIAL MEDIA, LLC, and ERIC RICHARD MILLS** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## COMPLAINT

Plaintiff Paradise Media Ventures, LLC d/b/a Interactive Media Ventures a/k/a Social Media Marketing University for its Complaint against Defendants National Institute for Social Media, LLC and Eric Richard Mills, states and alleges as follows:

1

## PARTIES

1.      Paradise Media Ventures, LLC ("Plaintiff") is a Georgia Limited Liability Company.  Plaintiff's sole member is a citizen of the State of Georgia.

2.      Plaintiff is the owner of the service mark CERTIFIED SOCIAL MEDIA STRATEGIST, registered on the Supplemental Register of the United States Patent & Trademark Office with registration number 4208089.

3.      Plaintiff operates its business and uses the CERTIFIED SOCIAL MEDIA STRATEGIST service mark globally on the Internet. National Institute for Social Media, LLC ("NISM") is a Minnesota Limited Liability Company with its principal office located in Minneapolis.  None of the members of NISM are citizens of the State of Georgia.

4.      Eric Richard Mills ("Mills") is a citizen of the State of Minnesota.  Mills is the Manager of NISM, and he resides in Minneapolis.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1338 (a) and (b), and has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's claims under state law.

6.      Plaintiff alleges that the conduct described herein has caused harm in excess of $75,000.00.

84460477.1

7.      As a result of the allegations set forth herein, this Court has personal

jurisdiction over Defendant

8.      As a result of the allegations set forth herein, this Court also has diversity

of citizenship subject matter jurisdiction under 28 U.S.C. §1332(a).

9.      As a result of the allegations set forth herein, venue is proper in this Court

under 28 U.S.C. §1391 (b) and (c).

**PLAINTIFF'S BUSINESS AND USE OF THE SERVICE MARK**

10.      Plaintiff is the owner of the service mark CERTIFIED SOCIAL MEDIA

STRATEGIST, registered on the Supplemental Register of the United States

Patent and Trademark Office with Registration Number 4208089.

11.      Plaintiff operates its business and uses the CERTIFIED SOCIAL MEDIA

STRATEGIST service mark globally on the Internet.

12.      Social Media refers to the means of interactions among people in which

they create, share, and exchange information and ideas in virtual communities and

networks.[1]

13.      Social   Media   include   popular   websites   and   services   such   as

FACEBOOK®, TWITTER®, PINTEREST®, LINKEDIN®, etc.

---

[1]      http://en.wikipedia.org/wiki/Social_media#cite_ref-1 (Ahlqvist, Toni; Bäck, A.,
Halonen, M., Heinonen, S (2008). "Social media roadmaps exploring the futures
triggered by social media". *VTT Tiedotteita - Valtion Teknillinen Tutkimuskeskus* (2454):
13. Retrieved 9 December 2012

84460477.1

14.     LINKEDIN® was launched in 2002, FACEBOOK® was launched in 2004, TWITTER® was launched in 2009, and PINTEREST® was launched in 2010.

15.     Plaintiff has been at the forefront of developing methods for the use and management of Social Media, including training and certifying individuals that use and manage Social Media.

16.     Plaintiff provides training, certification, and consulting to individuals and companies using Social Media to manage and improve image, perception, visibility, leads, sales and market share.

17.     In addition to providing Social Media consulting services, in 2009, Plaintiff created numerous courses, programs, and training to others of the methods and strategies it has developed.

18.     The purpose of the training, programs, and courses was to create a standard in the marketplace by which others could use Plaintiff's knowledge, methods, and strategies.  Plaintiff identified those who completed its comprehensive program as a CERTIFIED SOCIAL MEDIA STRATEGIST.

19.     Plaintiff has been continually using the service mark CERTIFIED SOCIAL MEDIA STRATEGIST since at least May 2009.

20.     In August 2009, Plaintiff registered certifiedsocialmediastrategist.com, which has continuously identified Plaintiff's training and certification programs under the CSMS mark.

21.     Plaintiff owns the trademark registration for the design and word mark CERTIFIED SOCIAL MEDIA STRATEGIST SMM UNIVERSITY CERTIFIED, which was filed in May 2010.   See USPTO Serial No. 85041083. Only CERTIFIED SOCIAL MEDIA STRATEGIST was intended to be registered, but through a miscommunication with counsel, the entirety of the logo itself was submitted for registration.

22.     Plaintiff offers a rigorous and structured certification course for which it has charged tuition of approximately $3,997.00.

23.     Plaintiff has expended significant time, effort, and resources in promoting its CERTIFIED SOCIAL MEDIA STRATEGIST ("CSMS") certification course, which has acquired secondary meaning in the minds of the relevant public.

24.     Approximately 115,000 people have completed Plaintiff's CSMS training and certification program since 2009.

25.     Plaintiff has won numerous accolades and been recognized for its programs relating to the CSMS mark, including:

a.  Winner of the International Business Awards "Best Global Training Site"

b.  Voted by MASHABLE® as one of the Top Social Media Services for Small Business Globally

c.  Awarded Social Media Marketer of the Year by the Technology Association of Georgia

5

## DEFENDANTS MILLS AND NISM

26.      Defendant Mills founded NISM on or about July 25, 2011.

27.      Defendant Mills registered the domain nismonline.org on or about July 31, 2011.

28.      The NISM domain was registered to NISM without any entity designation.

29.      Defendant Mills, at all times relevant hereto, has been the moving and acting force behind each and every decision to use, and use of, Plaintiff's marks as alleged herein.

30.      NISM holds itself out as offering education for practitioners in the social media industry for the purpose of offering training and credentialing.

31.      NISM initially referred to its Social Media program as a Certified Master of Social Media.

## DEFENDANTS' USE OF THE CSMS MARK

32.      NISM offered its first course in September 2012.  It was a live course and offered as social media strategist certification.

33.      In November 2012, Defendant Mills was introduced to Plaintiff's principal, John Souza, through a mutual acquaintance who arranged a telephone conference.

34.      During the telephone conference that occurred around November 2012, Souza informed Mills that Plaintiff had a registered trademark for the phrase "certified social media strategist."

84460477.1

35.     Also during the November 2012 telephone conference, Souza asked Defendant Mills to stop using the CSMS trademark.

36.     Despite being aware of Plaintiff's use of the CSMS mark, Mills decided that NSIM would adopt and use CSMS to identify the NISM course offering.

37.     NISM has been using the CSMS mark on its website, and in various Social Media outlets.  NISM offers its CSMS course for as little as $295.

38.     NISM offered its course, using the CSMS mark, through LERN"s UGotClass.org, many of whose members in turn marketed the NISM course.

39.     NISM also promotes and sells its courses through other education providers.  Specifically, the CSMS mark is used, for example, by NISM in connection with course offerings through colleges such as Argosy, Dunwoody Technical College, and Merced among others.

40.     Individuals are using the CSMS mark in identifying themselves.  For example, Kay Roseland identifies on her TWITTER® profile that she is a CSMS. Additionally, Nick Rosener similarly claims to be a CSMS in his Linkedin® profile.[2]

41.     While Plaintiff spends considerable time training its program participants in the various facets of Social Media before conferring the CSMS designation, Defendant is effectively selling its certifications as a commodity and further

---

[2]     *See* https://twitter.com/KayLoire; http://www.linkedin.com/in/nickrosener

84460477.1

causing confusion by selling a course allowing others to then certify their own students.

42.    As a result of the foregoing, NISM's use of the CSMS mark is likely to cause confusion among current students, prospective students, program graduates, educational institutions and businesses that identify Plaintiff's CSMS certification as an industry standard.

**COUNT ONE –Unfair Competition Under the Lanham Act**

43.    Plaintiff incorporates paragraphs 1-42 above as if fully set forth herein.

44.    Defendant's unauthorized use of Plaintiff's CSMS mark has caused and is likely to continue to cause confusion among those consumers who are interested in CSMS certification courses or rely upon Plaintiff's CSMS designation.

45.    As a result of the confusion, Plaintiff has been, and continues to be, irreparably harmed.  If Defendant is not compelled to cease and desist from further use, the value of Plaintiff's CSMS mark and associated goodwill will be severely reduced.

46.    15 U.S.C. §1125(a) provides remedies to parties whose unregistered marks are infringed or confusingly imitated by others.

47.    In addition to injunctive relief, Plaintiff is entitled to recover damages in an amount to be proven with certainty at trial.

84460477.1

## COUNT TWO–Liability of Eric Mills

48.     Plaintiff incorporates paragraphs 1-47 above as if fully set forth herein.

49.     Defendant Mills, as the active and moving force behind all NISM's uses of the CSMS mark, is liable to Plaintiff for infringement.

## COUNT THREE–Deceptive Trade Practices

50.     Plaintiff incorporates paragraphs 1-49 above as if fully set forth herein.

51.     NISM's use of the CSMS mark in connection with its certification course is likely to cause confusion as to affiliation, connection, association or certification with or by Plaintiff.

52.     NISM's use of the CSMS mark in connection with its certification course is likely to cause confusion with Plaintiff's CSMS mark as to source, sponsorship, or approval.

53.     The use of the CSMS mark by Defendant constitutes a false representation that its course certification is of a similar quality or grade as Plaintiff's CSMS certification.

54.     NISM's courses have been offered in Minnesota, Georgia, California, Pennsylvania, and Illinois, among others.

55.     NISM's conduct constitutes deceptive trade practices in these states, and Plaintiff is entitled to recover damages, attorneys' fees, and injunctive relief as allowed by law.

84460477.1

**COUNT FOUR–Violation of the Minnesota Deceptive Trade Practices Act**

56.     Plaintiff incorporates paragraphs 1-55 above as if fully set forth herein.

57.     The acts of Defendants complained of herein constitute deceptive trade practices in violation of the Minnesota Deceptive Trade Practices Act, Minnesota Statutes Section 325D.44 et seq.

58.     As a result of Defendants' wrongful conduct, Plaintiff is entitled to the preliminary and permanent injunctive remedies specified in the Prayer for Relief, and recovery of all reasonable attorneys' fees and costs incurred herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that:

(a)     Defendants, their officers, agents, servants, employees, attorneys and all those persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained from using, the CSMS mark, and any other mark, trade name, or corporate name that is confusingly similar to the CSMS marks;

(b)     Defendants be ordered to file with this Court and to serve upon Plaintiff within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction;

(c)     Plaintiff recover all damages it has sustained as a result of Defendants' activities;

84460477.1

(d)     An accounting be directed to determine Defendants' profits resulting from the activities complained of herein, and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of this case;

(e)     Plaintiff recover its reasonable attorney's fees;

(f)     Plaintiff recover its costs of this action and prejudgment and postjudgment interest; and

(g)     Plaintiff recover such other relief as the Court may deem necessary and just.

84460477.1

DATED: January 9, 2014.　　　**ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.**


By:　　*/s/Christopher K. Larus*
　　　　Christopher K. Larus (#0226828)
　　　　Kristine A. Tietz (#0393477)
　　　　2800 LaSalle Plaza
　　　　800 LaSalle Avenue
　　　　Minneapolis, MN 55402-2015
　　　　CKLarus@rkmc.com
　　　　KATietz@rkmc.com
　　　　Telephone:　612-349-8500
　　　　Facsimile:　612-339-4181

　　　　Ryan L. Isenberg (*Pro Hac Vice* Pending )
　　　　Isenberg & Hewitt, P.C.
　　　　Attorneys at Law
　　　　7000 Peachtree Dunwoody Road
　　　　Building 15, Suite 100
　　　　Atlanta, Georgia 30328
　　　　770-351-4400 (Voice)
　　　　678-990-7737 (Fax)
　　　　ryan@isenberg-hewitt.com

　　　　**ATTORNEYS FOR PLAINTIFF**

84460477.1